IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LANARD A. CLOYD,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>J.T. SHARTLE,<br><br>　　　　　Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-2794 (JBS)<br><br>**OPINION** |

APPEARANCES:

LANARD A. CLOYD, Petitioner Pro Se
07079-007
FCI Fairton
P.O. Box 420
Fairton, New Jersey 08320

PAUL J. FISHMAN, United States Attorney
IRENE E. DOWDY, AUSA
Office of the U.S. Attorney
401 Market Street
Fourth Floor
P.O. Box 2098
Camden, New Jersey 08101
　　Attorney for Respondent J.T. Shartle

Of Counsel:

SHARON GERVASONI, Assistant General Counsel
United States Parole Commission

ROBERT M. JENSEN, Senior CLC Attorney
Federal Bureau of Prisons

**SIMANDLE, Chief Judge:**

## I. INTRODUCTION

This matter comes before the Court on Lanard Cloyd's ("Petitioner") amended petition for writ of habeas corpus challenging the United States Parole Commission's ("the Commission") its calculation of his parole violation term. Amended Petition, Docket Entry 5. Respondents J.T. Shartle and the Commission oppose the petition. Answer, Docket Entry 9. Petitioner filed a response. Traverse, Docket Entry 10. The petition is being decided on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the petition is denied.

## II. BACKGROUND

On September 7 and 9, 1994, Petitioner was sentenced in the District of Columbia to two 15-year and 2-day terms ("D.C. sentence"). Declaration of Forest Kelly ("Kelly Dec.") Attachment A, Docket Entry 9-12 at 2-3. The Bureau of Prisons ("BOP") aggregated the two sentences into a single 15-year and 2-day sentence that began on September 7, 1994. Certification of Sharon Gervasoni ("Gervasoni Cert.") Exhibit 1, Docket Entry 9-2 at 3. After crediting Petitioner with 554 days jail credit, Petitioner's expiration full term ("EFT") date was March 3, 2008. Kelly Dec. Attachment A at 4. He was eligible for parole consideration on February 28, 1998; however, the Commission

2

denied release on August 27, 2001. Gervasoni Cert. Exhibit 1 at 3. He was mandatorily released "as if on parole" on August 21, 2002. Gervasoni Cert. Exhibit 2, Docket Entry 9-3. At that time, 2021 days remained on the D.C. sentence.

On September 25, 2003, the Commission issued a warrant charging Petitioner with violating the terms of his release. Gervasoni Cert. Exhibit 3, Docket Entry 9-4. The Commission charged Petitioner with failure to maintain regular employment, use of dangerous and habit forming drugs, and failure to submit to drug testing. *Id.* at 1-2. It further alleged Petitioner had been arrested by the Metropolitan Police Department ("MPD") on January 14, 2003 and June 25, 2003 for possession of heroin, possession with intent to distribute, possession of marijuana, possession of a firearm, and being a fugitive from justice. *Id.* at 2. The warrant directed the U.S. Marshal to place a detainer on Petitioner and assume custody of him once he was released. *Id.* at 3. It also informed Petitioner that "[i]f the commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release." *Id.* at 1. The Commission regained custody of Petitioner on June 6, 2013. Gervasoni Cert. Exhibit 5, Docket Entry 9-6 at 2.

On August 28, 2013, the Commission updated the warrant to include information about Petitioner's new convictions and

3

sentences. "Specifically, the Commission noted that [Petitioner's] convictions for use of a handgun in a crime of violence, attempted robbery with a deadly weapon and use of a handgun in commission of a crime of violence in the Prince Georges County, Maryland court, originally had resulted in three consecutive sentences of 20 years, and that the sentence had been modified to a total sentence of nine years, 342 days." Answer at 9 (citing Gervasoni Cert. Exhibit 4, Docket Entry 9-5 at 1). The Commission found probable cause for the violations on August 29, 2013 based on Petitioner's new convictions. Gervasoni Cert. Exhibit 6, Docket Entry 9-7.

A hearing on Petitioner's parole status was held on November 18, 2013. Petitioner was represented by counsel at the hearing and did not call any witnesses on his behalf. *Id.* at 2-4. Petitioner admitted all of the charges with the exception of possessing a firearm, possessing heroin, and being a fugitive from justice. *Id.* at 7-8. The Commission determined that Petitioner had violated the terms of his supervision and revoked his parole from his D.C. sentence and ordered that he would receive no credit for the time spent on parole between August 21, 2002 and June 6, 2013. Gervasoni Cert. Exhibit 7, Docket Entry 9-8. The Federal Bureau of Prisons ("BOP") calculated the Parole Violation ("PV") sentence as beginning on June 6, 2013 and ending 2021 days later on December 17, 2018. Gervasoni Cert.

4

Exhibit 9, Docket Entry 9-10. It noted that Petitioner would be released on mandatory parole on July 4, 2017. *Id.* at 1. Petitioner appealed the Commissioner's decision, arguing that "the delay in [his] revocation hearing led to loss of a voluntary witness," and "the Commission relied on outdated information . . . ." Gervasoni Cert. Exhibit 8, Docket Entry 9-9. The Commission affirmed the decision on April 7, 2014. *Id.*

This petition under § 2241 followed on May 2, 2014.

### III. STANDARD OF REVIEW

Parolees may challenge parole decisions made by the United States Parole Commission in a petition brought pursuant to 28 U.S.C. § 2241. *Smith v. U.S. Parole Comm'n*, 626 F. App'x 36, 37 n.1 (3d Cir. 2015) (citing *United States v. Kennedy*, 851 F.2d 689, 690 (3d Cir. 1988)). "[A] court's role in reviewing decisions by the Parole Commission on an application for a writ of habeas corpus is limited." *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 254 (3d Cir. 2000). "The appropriate standard of review of the Commission's findings of fact 'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" *Id.* (quoting *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976)) (alterations in original).

**IV. ANALYSIS**

Petitioner raises two grounds for relief. He argues that the Commission violated his Due Process rights by imposing a PV sentence that exceeded the amount of time remaining on his D.C. sentence. He further argues he was wrongfully denied good time credits under D.C. law. Respondent argues Petitioner misunderstands the Commission's decision.

As the record conclusively demonstrates Petitioner is not entitled to relief, no evidentiary hearing is warranted. 28 U.S.C. § 2243.

**A. Calculation of Sentence**

Petitioner states:

> I was given 169 months recommitment order and was credited 124 months by the parole commissioner for violation of parole; however, I only had 65 months and s [sic] days remaining on my original sentence.
>
> The commissioner is in violation of the constitution and the law of the District of Columbia by imposing a sentence that exceeds the maximum authorized by law (the commissioner was without jurisdiction to impose a recommitment order in excess of the courts sentence).
>
> Furthermore, in crediting me 124 months the parole commissioner exceeded the length of time I had remaining on my original sentence so I should have had an immediate release.

Amended Petition at 1. Petitioner's PV sentence was calculated correctly.[1] Prior to his violation, Petitioner's D.C. sentence

---

[1] Arguably, the petition is barred as Petitioner failed to exhaust his administrative remedies before filing this petition.

6

was to be fully served as of March 3, 2008; his mandatory release "as if on parole" date of August 21, 2002 was calculated after awarding him 2021 days in good time credits. *See* 28 C.F.R. § 2.87(a) ("When a prisoner has been denied parole at the initial hearing and all subsequent considerations . . . the prisoner shall be released at the expiration of his or her imposed sentence less the time deducted for any good time allowances provided by statute.").[2]

Petitioner concedes that the Commission had the discretion to require him to serve out the remainder of his term after violating his supervised release, Amended Petition at 2, and the Commissioner did in fact impose a PV sentence of 2021 days after deciding "[n]one of the time spent on parole shall be credited." Gervasoni Cert. Exhibit 7 at 1. These were not an additional 2021 days; they were the remainder of Petitioner's D.C.

---

"Federal prisoners are ordinarily required to exhaust available administrative remedies before seeking relief under § 2241." *Clark v. Allenwood*, No. 16-3206, 2016 WL 6777323, at *1 (3d Cir. Nov. 16, 2016) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981)). Although Petitioner filed an appeal with the National Appeals Board, he did not raise the arguments set forth in his petition in his appeal. *See* Gervasoni Cert. Exhibit 8. However, because Respondent did not assert failure to exhaust as a defense and it is potentially futile to require exhaustion at this point as Petitioner is scheduled to be released on July 4, 2017, the Court will address the merits.
[2] The record reflects Petitioner was awarded 211 days in D.C. Education Credits, 1800 days in statutory good time credits, and 10 extra good time credits. Kelly Dec. Attachment G, Docket Entry 9-18 at 1.

7

sentence. "[P]etitioner's sentence was not increased, but rather, the Commission rescinded credit towards completion of that sentence for time spent on parole, as required by D.C. law." *Campbell v. U.S. Parole Comm'n*, 563 F. Supp. 2d 23, 25 (D.D.C. 2008). The BOP calculated the remaining 2021 days as beginning on June 6, 2013 and ending on December 17, 2018. Kelly Dec. ¶ 9. There is no support for Petitioner's argument that his PV sentence exceeded his initial sentence.

Moreover, the record clearly reflects that the statement "[r]e-parole effective July 4, 2017 after the service of 169 months," Gervasoni Cert. Exhibit 7, was not imposing a PV sentence of 169 months, but instead was noting the total amount of time Petitioner will have spent in custody upon his release on July 4, 2017. Likewise, the Commission's statement that "[a]s of October 4, 2013, you have been in confinement as a result of your violation behavior for a total of 124 months," was not a credit of 124 months towards Petitioner's PV sentence. *Id.* The reparole guideline range and the PV sentence are calculated differently. "Time served on a new state or federal sentence shall be counted as time in custody for *reparole guideline purposes*. This does not affect the *computation of the expiration date of the violator term* . . . ." 28 C.F.R. § 2.21(c)(emphasis added); *see also* 28 C.F.R. § 2.81(a) ("[T]he Commission's decision to grant or deny reparole on the parole violation term

8

shall be made by reference to the reparole guidelines at § 2.21.").

Due to his new conviction, Petitioner's D.C. sentence "stopped running upon his last release from federal confinement on parole [and] start[ed] to run only upon release from the confinement portion of the new sentence." 28 C.F.R. § 2.47(e)(2). In other words, while Petitioner's time in state custody was properly used in calculating his reparole guidelines, it did not count towards service of his D.C. sentence. 28 C.F.R. § 2.47(e)(1)-(2). Service towards the D.C. sentence ended on August 21, 2002 and did not resume until June 6, 2013. The Commission's decision is supported by the record and applicable law; therefore, Petitioner is not entitled to relief on Ground One of his habeas petition.

**B. Good Time Credits**

Petitioner argues in Ground Two that he was denied 211 days of education credits and that he is presently being incarcerated past his sentence date. Amended Petition at 3; Traverse at 5-6.

Petitioner did not lose these credits. They were applied to his initial period of incarceration and resulted in his mandatory release on August 21, 2002. As he used these credits, they are not applicable to his PV sentence. "[G]ood time credit is 'used up' when a prisoner is released on parole and, thus, has no effect on a prisoner's term of imprisonment in the event

9

of parole revocation." *Otto v. Warden, FCI-Allenwood*, 209 F. App'x 149, 152 (3d Cir. 2006), *cert. denied sub nom Otto v. Miner*, 550 U.S. 949 (2007). "[O]nce an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release." *Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (citing 28 C.F.R. § 2.35(b)). Only good conduct credit earned after Petitioner's return to BOP custody may be applied to his PV sentence. D.C. Code § 24-406(a).[3] Petitioner is not entitled to relief on this basis.

**V.  CONCLUSION**

For the above stated reasons, the petition is denied. An accompanying Order will be entered.

| | |
|---|---|
| **January 24, 2017** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[3] The BOP calculated that Petitioner would be entitled to 531 statutory good time credits based on his PV term. Kelly Dec. ¶¶ 9-10; Kelly Dec. Attachment F, Docket Entry 9-17. He is scheduled to be released on July 4, 2017 instead on December 17, 2108, meaning he will end up serving 1490 days of the 2021 days remaining on his D.C. sentence.